■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT FIGLIOLO, Appellant. [616 NYS2d 367] —Appeal from judgment, Supreme Court, New York County (Angela M. Mazzarelli, J., at suppression hearing; Patricia Anne Williams, J., at trial and sentence), rendered February 18, 1992, convicting the defendant, after a jury trial, of grand larceny in the second degree and burglary in the third degree, and sentencing him, as a second felony offender, to concurrent indeterminate terms of imprisonment of from 3 to 6 years on the grand larceny count and 2 to 4 years on the burglary count, held in abeyance, and the matter is remitted to the trial court for a new hearing on the defendant's motion to suppress statements on the ground that they were the product of an arrest which was not supported by probable cause.

The defendant was indicted for the crimes of grand larceny in the second degree and burglary in the third degree stemming from the theft of certain artwork from the World Trade Center. According to the People, the defendant voluntarily accompanied the police to the World Trade Center for questioning at 12:00 P.M. on October 18, 1990, when they confronted him in a union hall on East 42nd Street. In their Voluntary Disclosure Form, they asserted that the defendant was not arrested until 6:00 P.M. that evening, after he had made inculpatory statements. Purportedly based on this representation, defense counsel moved to suppress the statements on the sole ground that the defendant had not been advised of his constitutional rights pursuant to *Miranda v Arizona* (384 US 436). He did not allege that the statements were the product of an illegal detention. The Supreme Court ordered a hearing. Detective Sam Nordmark of the Port Authority Police Department testified that he approached the defendant at the building on 42nd Street at 12:00 P.M. and, after advising him that he was investigating a burglary, told him that "he has to report down to the World Trade Center for some questioning". The defendant was placed in handcuffs and was driven to the World Trade Center where he was searched. He was then advised of his constitutional rights from a printed card. Nordmark added that although the defendant was a suspect and was not free to leave, he was not formally placed

under arrest until 6:00 P.M., after he made inculpatory statements.

The Supreme Court, concluding that the statements were voluntarily made after the defendant was properly advised of, and waived, his constitutional rights, denied the defendant's motion to suppress. Defense counsel then moved for reargument of the court's decision and for a hearing to determine whether the statements must be suppressed as the product of an illegal arrest. He maintained that based on the hearing testimony, the defendant was not arrested at 6:00 P.M., as indicated on the Voluntary Disclosure Form, but rather, at 12:00 P.M. on 42nd Street. Since his arrest was not supported by probable cause, counsel argued that the statements must be suppressed as the fruit of the poisonous tree.

The Supreme Court denied both prongs of the defense motion. As to a further hearing, the court found the motion untimely since the facts surrounding the defendant's detention were known to the defense at the time it filed its omnibus motion or at the latest, at the time the initial hearing took place. Nevertheless, the court considered the merits but still denied the motion. Based on the hearing record, the court concluded that despite being handcuffed, the defendant voluntarily accompanied the police to the World Trade Center, where he was not arrested until after he made the statements in question. The statements were thus found not the fruit of an illegal arrest.

Contrary to his testimony at the hearing, at trial, Detective Nordmark testified that when he approached the defendant and handcuffed him at the 42nd Street location, he told him he was under arrest. When confronted with his earlier testimony, Nordmark stated that he was not prepared at the hearing but had reviewed all his notes for trial. He repeated that he arrested the defendant at 12:00 P.M. but then added that he "officially" arrested him by booking him at 6:00 P.M.

After Detective Nordmark's testimony, defense counsel moved to reopen the hearing based on his conflicting statements. The trial court, believing it lacked the authority to take any remedial action, declined to "overrule" the hearing court.

At the next court appearance, the Trial Judge indicated that after further review, she was adhering to her decision denying the motion to reopen the hearing to determine the issue of probable cause. Although she had acknowledged the inconsistencies in Nordmark's testimony at the last court

appearance, she now stated that "virtually all of the circumstances that were presented before [the hearing court] were presented here as well". This, of course, overlooks the detective's concession at trial that he had testified incorrectly at the hearing.

The defendant was convicted. Prior to sentencing, defense counsel's motion to set aside the conviction on the ground that the defendant's arrest was not supported by probable cause and that the statements should have been suppressed as the fruit of this illegal arrest was denied.

On appeal, the defendant challenges only the trial court's denial of his motion to reopen the suppression hearing after Nordmark's testimony. We find that under the circumstances presented, it was an improvident exercise of discretion to have denied the defendant's motion.

Although a motion to suppress evidence should be made within 45 days after arraignment, the court may grant additional time upon application of the defendant prior to entry of judgment (CPL 255.20 [1]; 710.40 [1]). In addition, CPL 710.40 (4) gives a trial court discretion to reopen a suppression hearing before or during trial "upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion". Nordmark testified at trial that he was unprepared at the hearing to explain the many inconsistencies in his testimony. After testifying at the hearing that he did not arrest the defendant until after he made inculpatory statements at the World Trade Center, Nordmark stated at trial that he told the defendant that he was under arrest at the union hall, prior to any questioning. Thus, clearly, the arrest was prior to any statement of the defendant and could not have been based upon it. It has been the People's position that probable cause to arrest had been supplied by the defendant's pre-arrest statement. That obviously cannot be so.

The trial court was mistaken in its belief that it lacked the authority to grant defense counsel's motion to reopen the hearing. Such procedure is authorized by statute (CPL 710.40 [4]), as well as by case law recognizing the discretion of a trial court to reopen a suppression hearing based on evidence adduced at trial which indicates that substantial rights of the defendant may have been affected (see, e.g., People v Corso, 135 AD2d 551, 553; People v Dymond, 130 AD2d 799; People v Brigante, 115 AD2d 547; People v Perez, 104 AD2d 454; People v Ricks, 96 AD2d 788; People v Stroud, 63 AD2d 721).

On the record before us, it is impossible to determine whether there was sufficient evidence, in the absence of the defendant's statements, to support a finding of probable cause *(see, People v Ricks, supra; cf., People v Corso, supra).* The issue must, therefore, be resolved after a full examination of the facts at a reopened suppression hearing *(see, People v Brigante, supra; People v Perez, supra; People v Ricks, supra).* Concur—Rosenberger, Ross, Rubin and Williams, JJ.

Sullivan, J. P., dissents in a memorandum as follows: Since I believe that the trial court properly denied defendant's motion to reopen the suppression hearing, I would affirm.

Defendant timely moved to suppress his statements, claiming only that they were involuntary. He raised no Fourth Amendment grounds and never asserted that his arrest was illegal. After a hearing, the court denied suppression determining that while the statements were the product of custodial interrogation, defendant had knowingly, voluntarily and intelligently waived his constitutional rights.

Just prior to trial, defendant moved to reopen the suppression hearing, alleging that he was "placed under arrest at the time he was first confronted" and raising, for the first time, the claim that his arrest was unlawful and that he was entitled to a *Dunaway* hearing to determine whether the police had probable cause to arrest him. In response, the People challenged defendant's failure to allege these facts in his original motion, pointing out that "defendant knew or should have known the time and circumstances under which he was taken into custody." The court denied the motion, rejecting, as untimely, the argument that the statements should be suppressed as the fruit of an illegal arrest. The court found that no new facts had been alleged which were unknown to defense counsel before the making of the original motion, or, at the very latest, at the time of the hearing. The court noted that defendant could have moved at that time to expand the scope of the hearing but failed to do so.

In any event, the court, reaching the merits, concluded that the hearing record provided a basis to conclude that defendant had not been illegally arrested. The court found that, although handcuffed for the officers' safety, defendant voluntarily accompanied the detectives to the World Trade Center, where the handcuffs were removed, and was given the opportunity to make telephone calls and confer with his co-suspect. The court concluded that defendant was not arrested until after he was formally charged, which occurred after he gave his statements.

Defendant, at trial, again moved to suppress his statements near the close of the People's case based on Detective Nordmark's trial testimony that he had arrested defendant hours before when he and his partner first approached defendant and handcuffed him at a certain 42nd Street location. After a review of the hearing minutes and the hearing court's decision, the trial court agreed with the prosecutor that the circumstances presented at the hearing were virtually the same as those presented at trial. Thus, reargument on the issue of probable cause for defendant's arrest was denied.

The ruling was proper. While the People must give notice of an intent to offer at trial evidence of a statement made by a defendant to a public servant within fifteen days of arraignment (CPL 710.30 [2]), a defendant is required to make his pre-trial motions, including one to suppress, within forty-five days of arraignment. (CPL 255.20 [1]; 710.40 [1].) Defendant's belated effort to raise a *Dunaway* claim in mid-trial is the type of multiple motion practice which the pre-trial motion provisions of CPL article 255 were designed to avoid. *(See, People v O'Doherty,* 70 NY2d 479, 488.)

Concededly, a trial court has the discretion to reopen a suppression hearing before or during trial "upon a showing by the defendant[ ] that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion." (CPL 710.40 [4].) In that regard, defendant claims that "[i]t was not until trial that Detective Nordmark admitted that he arrested [defendant] at noon in midtown Manhattan". The difficulty with that argument is that the detective's answer does not resolve the legal question of when an arrest takes place. Whether defendant had been arrested at that time and place is not determined by the detective's subjective belief or facile answer but, rather, by what a reasonable man, innocent of any crime, would have thought had he been in defendant's position. *(People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851.)

Defendant can hardly complain that the facts as to the timing and objective circumstances of his arrest were unknown to him. *(See, People v Mitchell-Benetiz,* 168 AD2d 994, *lv denied* 77 NY2d 909.)* If defendant had been arrested at noon, as he now claims, he should have known that fact. "Because defendant had knowledge of the facts surrounding his arrest, those facts may not be considered 'additional pertinent facts * * * discovered by the defendant which he could not have discovered with reasonable diligence before the

determination of the motion'." *(Supra.)* Thus, as the trial court properly held, defendant has not presented any newly discovered facts entitling him to a reopening of the hearing.

Moreover, the record refutes the claim that defendant learned something new on this point at trial and that Detective Nordmark's trial testimony contradicted his hearing testimony as to the time he arrested defendant. Indeed, in moving for a *Dunaway* hearing just before trial, defendant argued that the hearing testimony "indicate[d] conclusively that the defendant was placed under arrest at the time he was first confronted." Moreover, the hearing court, in denying that motion, noted that defendant knew, at the very latest, by the time of the hearing that the detective may have effected his arrest at noon on the day in question.

Nor did Detective Nordmark in his trial testimony contradict his hearing testimony in a manner that compelled the court to overlook the untimeliness of defendant's Fourth Amendment claim. The detective initially testified at the hearing that he had not arrested defendant at noon and that later, at the World Trade Center, he administered the *Miranda* warnings. Subsequently, however, he testified, as he did at trial, that he had arrested defendant at that time. During cross-examination, the detective maintained that he had placed defendant under arrest before he gave his incriminating statements and before his co-suspect left the World Trade Center. It was only the "formal" booking that took place later, at 6:00 P.M. Thus, the detective's hearing testimony was, in essence, no different from his trial testimony. In any event, as already noted, the timing of defendant's arrest is determined by objective circumstances, not Detective Nordmark's intent. Nothing in Detective Nordmark's trial testimony cast any different light on the circumstances of defendant's initial encounter with the police at the 42nd Street building.

Finally, to the extent that the hearing evidence does not establish that Detective Nordmark had probable cause to arrest defendant, defendant can hardly be heard to complain. Had he timely raised the issue, the People could have presented evidence at the hearing showing that the detective had probable cause to take him into custody. No such evidence was presented because defendant failed to challenge his arrest before or even during the hearing. Such evidence would have been completely irrelevant to the issue of the voluntariness of the statements.

The judgment of conviction should be affirmed.